IN MATTER OF ESTATE OF BLUE: AMRINE ET AL.,
APPELLANTS, *v.* GABRIEL, ADMR., APPELLEE.

(Decided April 15, 1939.)

*Mr. Clifton L. Caryl, Messrs. Yager, Bebout &
Stecher, Messrs. Hunter & Baker* and *Mr. William R.
Cameron,* for appellants.

*Messrs. Hoopes, Sanders & Hoopes* and *Mr. F.
Stanley Crooks,* for appellee.

GUERNSEY, J. This is an appeal on questions of law
from a judgment of the Common Pleas Court of Union
county overruling exceptions to the first partial ac-
count of Fred Gabriel, administrator of the estate of
Ella S. Blue, deceased, on an appeal on questions of

law and fact from a judgment of the Probate Court of that county which also overruled exceptions to the first partial account.

Two separate appeals have been perfected, one by Nellie Turner Newborn and one by Ottie M. Amrine and others, all claiming as heirs of decedent.

Ella S. Blue died intestate on May 18, 1938. On the day following her death Fred Gabriel filed an application for letters of administration and was subsequently appointed as administrator. Thereafter, on June 20, 1938, Mrs. Tommie Southard, a sister-in-law of the deceased, presented to the administrator a claim against the estate for $7,800, based upon services alleged to have been performed for the deceased. At about the same time Dr. Harry G. Southard, a first cousin of the deceased, presented to the administrator a claim against the estate for $3,120.16. This claim was subdivided into two parts, the sum of $779 being for certain automobile trips and the balance of $2,341.16 being for professional services alleged to have been rendered to the deceased.

On June 22, 1938, the day after these claims were presented, the administrator filed in the Probate Court a schedule of debts severally listing the foregoing claims in the respective amounts mentioned, together with certain other claims as allowed by the administrator, as claims against the estate. The matter was assigned for hearing on July 2, 1938, and notice thereof was given by publication. One of the heirs, Philis Blue, filed exceptions to this schedule.

In his exceptions, Philis E. Blue represented that he was interested in the estate of Ella S. Blue, deceased, and excepted to the schedule of claims, debts and liabilities, as follows, to wit: "That said claims are not specified nor itemized and are excessive, and particularly the claims of Dr. H. G. Southard and Mrs. Tommie Southard, which claims are listed in said

schedule of claims, debts and liabilities, and further that said claims are unjust and should be disallowed.''

On July 5, 1938, the schedule of debts and the exceptions of Philis Blue thereto were heard by the court and, in the entry on the hearing, the Probate Court made the following findings and orders:

''And the court being fully advised in the premises and after evidence was duly taken on behalf of said administrator and on behalf of the creditors of said estate and on behalf of said exceptors, finds that said schedule of claims, debts and liabilities is in all respects in conformity to law and that the claims of Dr. Harry G. Southard and Tommie L. Southard are not excessive and that the same should be approved and allowed as set forth in said schedule of claims, debts and liabilities:

''It is therefore ordered, adjudged and decreed that schedule of claims, debts and liabilities be, and the same hereby is; approved and confirmed and it is ordered that said administrator proceed according to law with respect to the same.''

No appeal was perfected from the findings and orders of the court made on that hearing.

On July 8th the administrator filed his first partial account of the estate, in the Probate Court, showing among other things the payment of the following claims for which credit is claimed by the administrator in his account, to wit:

July 8, Voucher No. 20, ''Paid to Harry G. Southard $3,120.16.''

July 8, Voucher No. 21, ''Paid to Mrs. Tommie Southard $7,800.''

The payments of the two claims above mentioned for which credits are claimed are in the respective amounts for which these claims appear as allowed in the schedule of debts, and are evidenced by separate vouchers filed with the account, signed by the claimants respectively, under date of July 8, 1938, in which

the claimants respectively acknowledge the receipt from the administrator of the respective amounts their claims.

On July 23rd one Barbara Southard, an heir of the decedent, filed her exceptions to the account in which she stated:

"That said account is not true and proper in that; the administrator has set forth therein a payment of $3,120.16 to H. G. Southard for medical services rendered to the decedent and this claimant says said decedent suffered no illness of any great length nor were any operations performed on the decedent to warrant an expenditure of $3,120.16 for medical services.

"The heir herein also excepts as to an item of $7,800 which said account reflects as having been paid by the administrator to Mrs. Tommie L. Southard for care and keep of the deceased and alleges that the services rendered to the decedent by Tommie L. Southard were not of such value and therefore objects to the approval of the first partial account of Fred Gabriel, administrator of the estate of Ella S. Blue."

On the same day, Nellie Turner Newborn, representing that she is an heir at law of Ella S. Blue, deceased, filed exceptions to the account, in which she states: "That said first partial account is not correct and is especially not correct wherein said administrator credits himself with the following payments: Dr. H. G. Southard, $3,120.16. Mrs. Tommie Southard, $7,800."

On the same date, Philis E. Blue filed his exceptions to the account in which he excepted in the following particulars: "That said claims are not specified nor itemized and are excessive, and particularly the claims of Dr. R. G. Southard and Mrs. Tommie Southard, which claims are itemized in the first partial account of said estate. Exceptor further represents to the court that said claims are unjust and unreasonable and should be disallowed."

On August 18th, the court, upon the hearing of the first partial account and exceptions thereto, found that the exceptions were not well taken and that the account was in all respects correct and according to law, approved and confirmed the same, assessed the costs of the exceptions against the exceptors and fixed bond of appeal in the sum of $50. Nellie Turner Newborn and Philis E. Blue each gave separate notices of appeal to the Common Pleas Court and gave bonds pursuant to the order of the court.

Upon the appeals to the Common Pleas Court, the account and the exceptions thereto were heard *de novo* by the court.

As shown by the bill of exceptions in this case, Dr. Southard testified that he had been paid the amount of his account by the administrator around July 8th, payment being made by cashier's check, that the money that was paid to him is under his exclusive control and he would be responsible for it, and that he did not know of any restrictions of any kind attached to the payment.

Mrs. Tommie Southard also testified that she had been paid $7,800 by the administrator, that she had the money in her control in the bank in which Mr. Gabriel worked, that the payment of $7,800 was in a cashier's check which she had not cashed yet in order to protect Mr. Gabriel in case anything came against him, that she didn't have the check and didn't know who had it, and that she saw the check. On cross-examination, in reply to a question, "But as I understand it you are not to cash that check until this lawsuit is finished?" she answered, "Well, not the cashier's check to protect Mr. Gabriel."

On direct examination Fred Gabriel, the administrator, testified that he paid the claims of Dr. Southard and Mrs. Tommie Southard as shown in his partial account. But later, on cross-examination, he testified as follows:

"Q. Mr. Gabriel, do you have in your possession the $7,800 check payable to Mrs. Tommie Southard? A. No, sir.

"Q. Do you know where it is? A. No, sir.

"By Mr. Sanders [one of the attorneys for the administrator]: I can tell you where it is. Mrs. Southard's attorney has it.

"By Mr. C. A. Hoopes [one of the attorneys for the administrator]: Her attorney has it.

"Q. Does the same situation exist with reference to the check given to Tommie Southard, that is that it is a cashier's check uncashed? A. I presume it is."

As shown by the bill of exceptions, other evidence was offered on the hearing of the exceptions in the Common Pleas Court, both on the part of the administrator and the exceptors, with reference to the circumstances under which the services rendered by Doctor Southard and Mrs. Tommie Southard had been rendered, and the nature and value of such services, but in the view we take of this case, as hereafter set forth, it is unnecessary to set forth or discuss this evidence.

A number of errors are assigned in the respective briefs of appellants but, as argued in the briefs, these assigned errors are limited to two contentions: First, that the judgment of the court is contrary to law in that it is not sustained by any evidence; and, second, that the judgment of the court is against the weight of the evidence.

The determination of each of these assignments of error involves a consideration of the provisions of Section 10509-118, General Code, Section 10509-119, General Code, as amended (116 Ohio Laws, 398), and Section 10509-120, General Code (114 Ohio Laws, 428), in effect at all times during the administration of the decedent's estate, and these provisions will therefore be considered before the assignments are considered in detail.

Such sections provide as follows:

Section 10509-118. "Not later than five months after the date of his appointment, every executor or administrator shall make and return upon oath into court a schedule of all known claims, debts and liabilities against the estate, including any which may be known to the executor or administrator but not presented. Such schedule shall state the name and address of each claimant, the amount claimed, whether allowed or rejected, whether secrued by mortgage or otherwise, and the date of maturity if not yet due."

Section 10509-119. "Upon the filing of the schedule of debts the court shall forthwith set a day, not later than one month after the day such schedule of debts was filed nor prior to one week from the day of publication of notice for hearing thereon. One week's notice of the hearing shall be given by publication thereof in a newspaper of general circulation in the county. If more than one schedule is specified in such notice the costs must be paid in equal proportions by the respective estates. In addition to the notice by publication, ten days' notice of the hearing shall be given to all creditors whose claims are shown on the schedule to have been rejected in whole or in part by the executor or administrator.

"For good cause the hearing may be continued for such time as the court deems reasonable. Exceptions to the schedule of debts may be filed at any time prior to five days before the date set for the hearing or the date to which such hearing has been continued as provided herein by any person interested in the estate. When exceptions are filed, notice of the filing thereof and the day when the same will be heard must forthwith be given to the executor or administrator and to his attorney, and to the claimant or claimants whose claims are in question and their attorneys, by registered mail or personal service, unless such notice is waived. At the hearing the executor or administrator and any witness may be examined under oath. The

court shall have power to affirm, modify or reverse the action of the executor or administrator as to any item contained in the schedule of debts, excepting action on claims on which suit has already been brought, or which have been referred to referees, or which have been disallowed by requisition; and may dispose of any other matters properly raised by exceptions without the intervention of a jury.

"Subject to the right of review, and to be opened up for fraud, collusion or mistake, the finding and order of the court shall be final as between parties who have filed exceptions or otherwise voluntarily entered their appearance."

Section 10509-120. "When a person interested in an estate files exceptions to the schedule of debts, in the Probate Court, either party may appeal from its finding, order, or judgment or hearing thereof, to the court of Common Pleas."

There are two decisions of Courts of Appeals in which Section 10509-119, General Code, has been construed—*Locotosh* v. *Brothers, Admx.*, 52 Ohio App., 158, 3 N. E. (2d), 556, and *In re Estate of Perkins,* 22 Ohio Law Abs., 513—but both of these decisions relate to the provisions of that section before its amendment in 1935, and are inapplicable to the provisions of the section as amended.

In Lamneck's Probate Digest, 376, Section 581, the author in commenting on this section states:

"The purpose of filing a schedule of debts is to enable the fiduciary to pay claims after approval of the schedule without peril to himself. In other words, the validity of the claims is determined before payment, and the fiduciary does not subject himself to exceptions to his account for either paying or not paying a claim."

And in the 1935 Supplement to Deibel's Ohio Practice under Rule 9, pages 188 and 189, in commenting upon this section it is stated:

"The purpose of filing a schedule of debts is to enable the fiduciary to pay claims after approval of the schedule without peril to himself. In other words, the validity of the claims is determined before payment, and the fiduciary does not subject himself to exceptions to his account for either paying or not paying a claim. It is deemed conclusive that if a fiduciary has allowed a claim, the court can review the allowance on the filing of exceptions. Likewise, if a claim has been disallowed, the court can review the disallowance on the filing of exceptions subject to other possible limitations. * * *

"On exceptions filed to a schedule of debts, the probate judge should proceed to a full hearing on the questions raised, which would include the validity of claims and the amount thereof, because such questions were always determined when exceptions were filed to the account."

It will be noted that under the provisions of Section 10509-118, General Code, it is the duty of every executor or administrator to make and return upon oath into the Probate Court a schedule of all known claims and liabilities against the estate, including any which may be known to the executor or administrator but not presented; and it is mandatory that such schedule state the name and address of each claimant, the amount claimed, whether allowed or rejected, whether secured by mortgage or otherwise, and the date of maturity if not yet due.

It will also be noted that Section 10509-119, General Code, as amended, provided such details as are incident and essential to the validity of adversary proceedings, such as the hearing of such schedule, the giving of notices thereof, the filing of exceptions thereto and notices thereof, the examination of witnesses at such hearing, the powers of the court over the subject-matter and the finality of its findings and orders.

It will also be noted that under the provisions of

the last-mentioned section the right to file exceptions to such schedule of debts is conferred on any person interested in the estate; and power is conferred on the court on the hearing of the schedule of debts and exceptions, if any thereto, to affirm, modify or reverse the action of the executor or administrator as to any item contained in the schedule of debts, excepting action on claims upon which suit has already been brought, or which have been referred to referees, or which have been disallowed by requisition. Power is also conferred on the court to dispose of any other matters properly raised by exceptions without the intervention of a jury.

From a consideration of the provisions above mentioned and the broad grant of power to the court on the hearing of a schedule of debts, it is clear that the Legislature in the enactment of these sections intended and accomplished a complete change in the policy of the laws of Ohio with reference to the allowance of claims against the estate of a decedent, in that the validity of the allowance of the claim is no longer subject to determination upon exceptions to the account of the fiduciary but is finally determined on the hearing of the schedule of debts and exceptions, if any, thereto.

The jurisdiction in testamentary matters was originally vested in and exercised exclusively by the ecclesiastical courts and courts of chancery, in which all matters were determined by the courts without the intervention of juries. Since the adoption of the first Constitution in Ohio, jurisdiction in such matters has been conferred on the Probate Court. Section 8, Article IV, Constitution, now in effect, provides that "The Probate Court shall have jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, the settlement of the accounts of executors, administrators * * *."

With reference to this constitutional provision it

has been held that: "This provision in the organic law of the state gave to the Probate Court separate existence and separate jurisdiction." *In re Estate of Gurnea,* 111 Ohio St., 715, 146 N. E., 308. See, also, *Brown, Exr.,* v. *Reed,* 56 Ohio St., 264, at 270, 46 N. E., 982.

Section 10501-32, General Code, provides: "Unless otherwise provided by law, all questions of fact shall be determined by the probate judge, unless, in his discretion, he orders them to be tried by a jury, or referred, as provided herein."

Under the practice in the ecclesiastical courts and in the courts of chancery persons interested in the estate of a decedent, either as creditors or heirs, had no right to trial by jury of their claims against or interest in such estate. And under the constitutional provision conferring jurisdiction on the Probate Court no such right exists except as it may be conferred by statute. Section 10509-119, General Code, expressly provides for a hearing without the intervention of a jury; and in other matters, by force of Section 10501-32, General Code, unless it is otherwise provided by law all questions of fact shall be tried by the probate judge unless in his discretion, he orders them to be tried by a jury, or referred.

The Constitution preserves the right to trial by jury in those cases only where it existed previously to its adoption, so that the statutory provisions as to the hearing, without the intervention of a jury, on the schedule of debts and exceptions, if any, thereto, does not deny to any one his constitutional right to trial by jury. *Brown, Exr.,* v. *Reed, supra.*

The constitutional provision, above mentioned, conferring jurisdiction on the Probate Court, confers no constitutional right in persons interested in the estate of decedents, either as creditors or heirs, to intervene in the administration of estates or except to the action of the fiduciaries therein, and such rights as such per-

sons may have in the premises are derived solely from statutes. In the absence of statutory provision conferring such rights, such persons are without any rights whatever in the premises. *Crawford, Admr.*, v. *Zeigler*, 84 Ohio St., 224, 95 N. E., 743.

The amended section mentioned expressly provides that subject to the right of review and to be opened up for fraud, collusion or mistake, the finding and order of the court shall be final as between parties who have filed exceptions or otherwise voluntarily entered their appearance.

The effect of this provision is clearly to bind the exceptors and those who have otherwise voluntarily entered their appearance, and where they fail to avail themselves of the right of review, their right to open up the order entered by the court on the hearing is limited to cases of fraud, collusion or mistake. This is true notwithstanding the fact that the payment of a claim, the allowance of which has been approved by the court on such hearing, is made before the statutory time of an appeal has expired, as the payment does not affect the operation of the order of the court, or take away the exceptors' right to review, but only has the effect of subjecting the executor or administrator to liability in case an appeal is taken and the order of the court reversed.

As hereinbefore mentioned, under the provisions of Section 10509-119, General Code, as amended, the right to file exceptions to the schedule of debts is conferred on any person interested in the estate, including persons interested as creditors or heirs, and the finding and order of the court made therein is final as between parties who have filed exceptions or otherwise voluntarily entered their appearance, subject to the right of review and to be opened up for fraud, collusion or mistake.

Under the provisions of Section 10509-120, General Code, when a person interested in the estate files ex-

ceptions to the schedule of debts in the Probate Court either party may appeal from the court's finding, order or judgment on hearing thereof, to the Court of Common Pleas.

Considering these provisions in connection with the matters herein above considered, the question arises as to whether the finding and order made by the Probate Court is also final and binding upon persons interested in the estate who have neither availed themselves of their right to file exceptions nor otherwise voluntarily entered their appearance.

To determine this question it is necessary to consider the nature of the proceeding in which the finding and order is made. Its general purpose is to determine what claims are to be paid out of the personal estate in the hands of the fiduciary of the decedent. Unless the personal estate is insufficient to pay all claims, a creditor has no interest in the allowance or disallowance of the claims of another creditor and where, as in the case at bar, the estate of an intestate is involved, and the personal estate in the hands of the administrator is sufficient to pay all claims, the affirmance, reversal or modification of the action of the administrator in allowing or disallowing claims is a matter of adjudication affecting only the individual claimants severally on the one side, and the administrator as the representative of the estate and the heirs and distributees of the decedent on the other side. In such a case the interest of the heirs and distributees in the matter adjudicated is joint and inseparable as their respective shares in the estate are affected *pro tanto* in the same manner by the action of the court; or to express it in another way, by reason of the nature of the subject-matter the action of the court in affirming, reversing or modifying the action of the administrator in allowing or disallowing a claim as to one heir has a similar effect on the shares of the other heirs in the corpus of the estate.

A proceeding for the allowance or rejection of claims for payment out of a fund being administered by a court constitutes a proceeding *in rem*. *St. Clair* v. *Morris,* 9 Ohio, 16, 18; *Bradford* v. *Andrews,* 20 Ohio St., 208, 219, 5 Am. Rep., 645; *Cross* v. *Armstrong,* 44 Ohio St., 613, 623, 624, 626, 10 N. E., 160; *McMahon, Admr.,* v. *Ambach Co.,* 79 Ohio St., 103, 114, 86 N. E., 512; 1 Corpus Juris Secundum, 944, 1148, 1149, 1150; 34 Corpus Juris, 1171 *et seq.,* Section 1660 *et seq.; Trimble* v. *Kansas City. P. & G. Rd. Co.,* 180 Mo., 574, 79 S. W., 678.

The distinction between an action *in rem* and an action *in personam* is that in an action *in rem* a valid judgment may be obtained so far as it affects the *res* without personal service of process, while in an action to recover a judgment *in personam* process must be personally served or there must be a personal or authorized appearance in the action. *White* v. *Glover,* 138 App. Div., 797, 799, 123 N. Y. Supp., 482, affirming 116 N. Y. Supp., 1059; *Dulin* v. *McCaw,* 39 W. Va., 721, 727.

"While actual notice or personal service of process is not required, yet in the absence of actual notice, there must be such published or constructive notice or proclamation as the law requires in the particular case, by which persons having interests to be affected are supposed to be informed of the proceeding." 34 Corpus Juris, 1172, Section 1661.

"A judgment *in rem* is conclusive and binding 'upon all the world,' that is, upon all persons who may have or claim any right or interest in the subject-matter of the litigation." 34 Corpus Juris, 1172, Section 1663.

"In the strict sense of the term only those are parties to an action within the doctrine of *res judicata* whose names appear on the record as such, and who have continued in the case, without being dismissed or stricken out, including those who intervene or con-

nect themselves with the record by entering an appearance or filing an answer or other pleading * * *. But in the larger sense the term 'parties' includes all persons who have a direct interest in the subject-matter of the action, and have a right to control the proceedings, make defense, examine witnesses, and appeal if any appeal lies, and if a person who has such an interest in the subject-matter as would be injuriously affected by the judgment, or is in privity with, or bound to indemnify, one of the parties, has notice of the pendency of the action and refuses or neglects to appear and avail himself of his rights, he will be concluded by the judgment, although not named as a party to the action.'' 34 Corpus Juris, 992, Section 1410.

In the state of Illinois where the allowance of claims against an estate is made by the Probate Court upon hearing after publication of notice thereof, with opportunity to persons interested in the estate to except to the allowance of the claims, it is held that as to the personal estate the allowance of a claim against an estate, not appealed from, is conclusive not only upon the executors, but upon the heirs and legatees, unless its allowance was procured by fraud and collusion between the claimant and the personal representatives. *Ward* v. *Durham,* 134 Ill., 195, 25 N. E., 745; *Gold* v. *Bailey,* 44 Ill., 491, 92 Am. Dec., 190.

And it is also held that: ''Any other rule would lead to the intolerable practice of compelling persons holding claims against an estate to litigate them first with the administrator or executor, and afterward with the heirs or legatees upon the same points which might have been investigated in the first case.'' *Sherman* v. *Whiteside,* 93 Ill. App., 572, 574 and 575.

For these reasons, and upon the authorities hereinbefore mentioned, it is clear that, unless otherwise expressly provided by statute, where a proceeding in Probate Court authorized by statute has as its object

the affirmance, reversal or modification of the action of a fiduciary in the allowance or rejection of claims against the estate of a decedent in the process of administration in court, and pursuant to statute, notice of the pendency thereof is given by publication with the right to any person interested in the estate to file exceptions to the schedule of debts exhibiting the action of the fiduciary on such claims, and to appear at the hearing of the schedule of debts and file exceptions, if any, thereto, at which witnesses may be examined under oath, and be heard thereon, and by further statutory provision additional notice of the filing of exceptions, and of the hearing thereon, is required to be given to the fiduciary and his attorney and the claimant or claimants whose claims are in question, and their attorneys, an order entered by the court on the hearing, affirming, reversing or modifying the actions of the fiduciary with reference to the allowance or rejection of claims, is a final order having the force and effect of a judgment concluding all persons interested in the estate irrespective of whether such persons or any of them filed such exceptions or voluntarily entered their appearances in the proceeding.

An examination of the cases in jurisdictions in which it is held that an order of the Probate Court, allowing a claim or approving the action of a fiduciary in allowing a claim against an estate, is not conclusive as against the heirs and distributees, discloses that such allowances were made *ex parte* or it was specifically provided by statute that the allowance of a claim is the subject of exceptions to the account of the fiduciary.

In most jurisdictions the right to appeal from a final order of the character mentioned is derived from and regulated by statute, but in Ohio, by virtue of the provisions of Section 6, Article IV of the Constitution, conferring jurisdiction on the Court of Appeals to review, affirm, modify or reverse the judgments of the

Court of Common Pleas, Superior Courts and other courts of record within the district, as may be provided by law, the right to appeal from such order to the Court of Appeals on questions of law exists irrespective of statutory provisions. The right mentioned extends to any person affected by the judgment of the Probate Court with respect to claims against the estate whether such person is a party to the record or not. 24 Corpus Juris, 385, Section 1071.

On the other hand, in Ohio the right of appeal from the Probate Court to the Common Pleas Court is derived from and governed exclusively by statute.

Under the provisions of the General Code of Ohio, relating to the allowance or rejection of claims against estates of decedents, the power to allow or reject is conferred on the fiduciary, and the jurisdiction conferred on the Probate Court under Section 10509-119, General Code, is to review the action of the fiduciary.

Under the general rules heretofore mentioned (assuming there are no statutes otherwise expressly providing), when, upon such review, the Probate Court affirms the action of the fiduciary in allowing a claim, or reverses the action of the fiduciary in disallowing a claim, the order of affirmance or reversal finally determines the validity of the claim for payment out of the personal estate of the decedent as against all persons interested in the estate; and when the Probate Court affirms the action of the fiduciary in disallowing a claim, or reverses the action of the fiduciary in allowing the claim, the claim stands as rejected and the claimant is remitted to his remedy of an action at law to establish and enforce his claim; and when the Probate Court modifies the action of the fiduciary in allowing or rejecting a claim, if the part allowed is severable from the part disallowed the claim stands as allowed as to the part allowed and disallowed as to the balance, and as to the balance the claimant is remitted to his action at law; and in case the part dis-

allowed is not severable the claimant may treat such partial disallowance as a rejection of the entire claim and sue for the entire amount. 24 Corpus Juris, 384, Section 1067.

In the enactment of the new Probate Code, in effect at all times pertinent to the case at bar, no changes were made in the phrasing of statutory provisions relating to the filing and subject-matter of exceptions to accounts of the fiduciary of the estate of a decedent except as hereinafter mentioned.

Section 10506-37, General Code, a section of the new Probate Code, provides for the giving of notice by publication of the filing of an account and that exceptions to an account may be filed by an interested party not less than five days prior to the day set for hearing.

The provisions of this section are similar to those of repealed Section 11201, General Code, except that in Section 10506-37, General Code, the persons who may file exceptions are described, and a time limit is fixed for filing exceptions. The description of persons who may file exceptions did not constitute any material change in statutory provisions as it had been uniformly held in the absence of such statutory description that exceptions to the account may be filed by any interested person.

Section 10506-38, General Code, a section of the new Probate Code, provides that the probate judge may examine under oath all fiduciaries touching their accounts, and is in substance the same as repealed Section 11202, General Code.

Section 10506-39, General Code, a section of the Probate Code, provides that the Probate Court may hear and determine all matters relative to the manner in which the fiduciary has executed his trust, and as to the correctness of his accounts. There are no provisions in this section or any other statute specifically making the matter of the allowance of a claim against an estate the subject of exceptions to an account. The

provisions of this section are similar to the provisions of repealed Section 11031, General Code, which were applicable to guardians and their accounts, but until the enactment of the new Probate Code there were no similar provisions in effect applying to fiduciaries of decedent's estates and their accounts. These provisions, however, made no material change in the matter of exceptions to an account, as in the absence of such provisions it had been uniformly held that all matters relative to the manner in which the fiduciary had executed his trust, and as to the correctness of his account, were proper subjects for exceptions to the account. Prior to the taking effect of the new Probate Code, the correctness of the account being a subject of exceptions and the statutes then in effect not providing for the adjudication by the court, on the allowance or rejection of claims against the estate of a decedent by a fiduciary, it was further uniformly held that the matter of the allowance of a claim, credit for the payment of which was claimed in his account by the fiduciary, was a proper subject for determination on exceptions to his account.

It is obvious, however, that if under the provisions of Section 10509-119, General Code, a part of the new Probate Code, affirmance by the court of the action of a fiduciary of a decedent's estate allowing a claim against the estate has the force and effect of a judgment as to all persons interested in the estate, the matter of the allowance of such claim and the credit claimed by the fiduciary for payment thereof, pursuant to such affirmed allowance, do not, under the new Probate Code, constitute a subject of exceptions to an account of a fiduciary, as all persons interested in the estate are concluded in the premises by the judgment of affirmance.

While, as hereinbefore noted, no material changes have been made in the substance of the statutory provisions relating to the filing and subject-matter of ex-

ceptions to the accounts of the fiduciaries of the estates of decedents, there is a provision of the new Probate Code, not existing under former statutes, which throws light on the effect to be given to the provisions of Section 10509-119, General Code. The provision referred to is the last paragraph of Section 10501-53, General Code, which defines the jurisdiction of the Probate Court as follows:

"The Probate Court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute."

·This provision constitutes the Probate Court a court of general jurisdiction. The rules hereinbefore mentioned, in the absence of statutes otherwise expressly providing, are applicable to courts having general jurisdiction over the subject-matter.

We will therefore examine the provisions of Section 10509-119, General Code, in the light of these rules.

As hereinbefore mentioned, the proceedings and order provided by this section are of such nature as to be final and binding on all persons interested in the estate unless otherwise expressly provided by statute. This section provides that "subject to the right of review, and to be opened up for fraud, collusion or mistake, the finding and order of the court shall be final as between parties who have filed exceptions or otherwise voluntarily entered their appearance," but does not purport to define the effect of the finding and order on persons interested in the estate who have neither availed themselves of the right to file exceptions nor otherwise voluntarily entered their appearance. As to exceptors and those who voluntarily entered their appearance the effect of the finding and order as fixed by the statutory provisions mentioned is the same as it would have been if there had been no such statutory provision; and as to those persons interested in the

estate not coming within the classes mentioned the provision does not purport to have any effect.

The Probate Court, under the general principles of law applicable to courts exercising a similar jurisdiction, and the above-quoted provisions of Section 10501-53, General Code, has plenary power at law and in equity to dispose of any matters properly before the court unless the power is expressly otherwise limited or denied by statute. Such power, insofar as the persons interested in the estate not excepting or voluntarily entering their appearance is concerned, is not expressly otherwise limited or denied by statute. In this situation, both under the general principles of law and the provisions of Section 10501-53, General Code, above mentioned, the power exercised by the Probate Court under the provisions of Section 10509-119, General Code, in entering its finding and judgment is plenary in law and in equity; the power exercised being plenary, the proceeding being *in rem,* and the court by reason of the nature of the proceeding and the publication of notice having acquired jurisdiction over all persons interested in the estate, such finding and judgment are conclusive as to those persons interested in the estate not coming within the classes mentioned, without express statutory provision to that effect, subject only to their constitutional right of appeal to the Court of Appeals on questions of law, hereinbefore mentioned, and their right, hereinafter mentioned, to have such finding and judgment opened up for fraud, collusion or mistake.

This conclusion is supported by a consideration of the subject-matter of the proceeding provided for in Section 10509-119, General Code, as by reason of the nature of the subject-matter an order affirming the allowance of a claim binding on one or more heirs must necessarily be binding as to all other heirs as their interests, insofar as the allowance is concerned, are inseparable.

The fact that persons interested in the estate, who have neither availed themselves of their right to file exceptions nor otherwise voluntarily entered their appearance, have no right of appeal to the Court of Common Pleas from the finding, order or judgment or hearing thereof of the Probate Court, in no wise affects the conclusiveness of the judgment as to them as they have the right under Section 10509-119, General Code, to file exceptions or voluntarily enter their appearance and thereby entitle themselves to appeal under the provisions of Section 10509-120, General Code. The availability of the right and not its exercise is the criterion for determining the conclusiveness of the finding and order as to them, and furthermore notwithstanding their failure to avail themselves of the right to file exceptions or voluntarily enter their appearance, they have, as above mentioned, the constitutional right of appeal on questions of law to the Court of Appeals.

We will turn now to the question as to what rights persons interested in the estate of a decedent who have failed to file exceptions to the schedule of debts or voluntarily entered their appearance have to open up the finding and order of the court entered thereon.

Section 10501-17, General Code, a section of the new Probate Code, provides: "The Probate Court shall have the same power as the Common Pleas Court to vacate or modify its orders or judgments."

This section extends to the Probate Court's control of its own orders and judgments during the term at which they are rendered, which control may be exercised, within the sphere of sound discretion, as an inherent right founded upon common law, and such jurisdiction includes equitable as well as statutory grounds. *First National Bank* v. *Smith*, 102 Ohio St., 120, 130 N. E., 502; *Abicht* v. *O'Donnell*, 52 Ohio App., 513, 3 N. E. (2d), 993; *Seeds* v. *Seeds*, 116 Ohio St., 144, 156 N. E., 193, 52 A. L. R., 761; 23 Ohio Jurisprudence,

1269, Section 1209. It also extends to the Probate Court's control of its own orders and judgments after term upon equitable grounds as well as statutory grounds including, among others, the following: For mistake, neglect or omission of the clerk or irregularity in obtaining the judgment or order; for fraud practiced by the successful party in obtaining the order or judgment when such order or judgment was obtained in whole or in a material part by false testimony on the part of the successful party, or any witness in his behalf. Lamneck's Probate Practice, pages 26, 27, 28 and 29.

The order of the Probate Court entered on the hearing of the schedule of debts and the exceptions thereto, affirming allowance of the claims in controversy therefore became final, in the absence of an appeal from said order by a party thereto, as to all persons interested in the estate, subject only to the statutory right of the exceptor and persons voluntarily appearing as parties in the proceeding to have the same set aside for fraud, collusion or mistake, and the rights of such persons and other persons interested in the estate to have the same vacated or modified under the provisions of Section 10501-17, General Code, above referred to.

Assuming, but not deciding, that a finding and order of the Probate Court affirming the allowance of claims by an administrator may be attacked for fraud, collusion or mistake, on exceptions to an account of the administrator, there is in the instant case no charge and no evidence of fraud, collusion or mistake as to the finding and order, and consequently the same are final and binding as to all persons interested in the estate including those who have excepted to the account.

As the finding and order of the Probate Court allowing the claims in question are conclusive on the administrator and all persons interested in the estate, for the reasons above mentioned, it became the duty of

the administrator to pay the same and the matter or manner of payment by the administrator is not the subject of exceptions to his account by heirs of the decedent.

With these matters in mind we will now consider the assignments of error that the judgment of the Common Pleas Court is contrary to law in that it is not sustained by any evidence and the judgment of the court is against the weight of the evidence.

The evidence and record in the case conclusively show that the Probate Court on the hearing of the schedule of debts and exceptions thereto affirmed the allowance of the claims to which the exceptions to the account are directed, and that no appeal was perfected from the finding and order which thereby became final and binding and established the validity of the claims for payment as to the exceptor and all other persons interested in the estate, as above mentioned. As the exceptions did not lie to the matter or manner of payment this evidence is sufficient to support the finding and judgment of the Common Pleas Court, and the same is not contrary to law by reason of not being supported by any evidence or against the weight of the evidence.

Finding no error in any particular assigned and argued in the briefs, the judgment will be affirmed at costs of appellants.

*Judgment affirmed.*

CROW, P. J., and KLINGER, J., concur.